https://www.linkedin.com https://www.linkedin.com https://www.linkedin.com In the appendix at 1314, the district court expressly says the claims are patent ineligible quote, considered a loan or as an ordered combination. Doesn't that directly conflict with your assertion that you failed to address it? No, Your Honor. The district court made the statement, but the district court didn't consider the ordered combination.  And there's no analysis from the district court on whether the ordered combination was invented. Can I just ask you a basic question? Yes. Everybody's talking about the combination of elements and whether or not it was conventional or non-conventional. What are you referring to when you talk about that? Are you talking about receiving, establishing, and including limitations? Or are you talking about some hardware components being combined? So, Your Honor, we're talking about the steps. So this is a method claim. You're talking about receiving, establishing, and including those limitations were not conventional? Those limitations in combination to form the specific solution that's rooted in computer technology and that overcame the prior art, which also claimed reciprocal links. They're not claiming reciprocal links. What's the new use that you claim the asserted claims disclosed? It's a new method whereby... Wait a minute. 42 of the blueprint. There is nothing wrong with claiming conventional components because a process may claim a new use of known components. I said, what's the new use? Okay, the new use is the method. The use is the method. It's the steps, the ordered combination of steps wherein the computer automatically creates reciprocal links, but only after both parties opt in. And that was not claimed in the prior art. The prior art contends that the asserted claims are merely taking conventional computer components and adding them to well-known business practices. How is that incorrect? Your Honor, first of all, we're focused on the combination of the steps. And I believe there was an... Tell me about what... I'm still having a hard time understanding if the steps are individually known in the art, or routine, or conventional. And you keep using the frame, the ordered combination of those elements, of the steps, the ordered combination of you've got receiving, receiving, establishing, including, including. Okay. Thank you, Your Honor. First of all, the step requiring both users to provide an opt-in, that distinguishes over the prior art. The prior art to Horstman had both opt-ins. And the prior art to Horstman said there didn't need to be any intervention from the user. And this one requires it, which prevents undesirable links. So how is that related to the ordered combination was not... They're separate reasons, Your Honor. The steps have limitations in them, which are more than just a conventional recitation. And the ordered combination of steps, Your Honor, is definitely more, because it's a new way of creating reciprocal links. And Your Honor... What's the new way? Your Honor, at this point, when we're having to wade into what the claims show, we're wading into the facts. And these are the facts that are supposed to be resolved in our favor on a Rule 12 motion. In the red brief, it's 60. There's a list of evidence that LinkedIn argues is appearing for the first time in your opening brief. Would you take a look at that page and tell me where I can find each item in the record as having appeared below? Page 60, Your Honor? Yes. I'm sure you're familiar with it. Okay. Yes, I know. So... I would expect that you, Ms. Addy, would be prepared to answer that question. Absolutely. Thank you, Your Honor. First of all, the court can take judicial notice of webpages, and the citations to the webpages in the beginning, that is background information. Take judicial notice of webpages? What case is that? And what's the foundation for each of those webpages? When, where, why, who, what, how, who interjected into it? They're presented, Your Honor, as background information, and you can ignore them if you like. However, the patent to Ross, the patent to Ross is the DDR Holdings patent, and that patent is cited on the cover of this patent. And so it's part of the prosecution history, it's part of the intrinsic record, and therefore it's appropriate to consider on a 112 motion to dismiss under 101. Secondly, the patent to Horstman, Your Honor... Was it argued below? Excuse me? Was it argued below? Ross was not argued below. However, again, these are the facts that support the allegations that are made in the complaint, and the district court should have resolved those allegations in favor of DiStefano instead of in favor of LinkedIn. These are just the facts that back them up. When you say the facts, does your complaint discuss Ross? Yes, no, Your Honor, the complaint does not discuss Ross, but the complaint discusses the improvements over the prior art at paragraphs 10 and 12, and this is why Ross was cited as prior art. What about Horstman? Are you going to make exactly the same argument? No, Your Honor, I'm not going to make the same argument. Your Honor, Horstman, again, it's on the cover of the patent, and it was distinguished during the prosecution history, but in addition, Horstman was injected into this Rule 12 record by LinkedIn, and they put it in the record as supplemental authority when they cited to an office action rejecting the patent, rejecting a follow-along patent based on Horstman, and they said to the court, Your Honor, this office action is instructive, and so they put Horstman into the record. In the blue brief at 55, you say that the district court made an improper determination regarding the manner in which the asserted claims improvements actually function. How is that improper? Improperly determined. The district court said that the claims were directed to a result. The claims are not directed to a result. The claims are directed to a specific and novel method of claiming that result. That might be inaccurate, but how is it improper? Because they left out the part that distinguishes the claims and the part that makes the claims survive 101 and for sure 112 because we're looking at a pleadings analysis. In the blue brief at 33, you provide what you call specific assertions of patent infringement by LinkedIn by pointing to the appendix at 72 to 89, which are screenshots of LinkedIn web pages. How is that not completely conclusory? Your Honor, under dis-disease solutions, when you're analyzing a pleading under Rule 12, you look at the assertions made, and the allegations made are, one, we own the patent, and number two, all of the steps of the asserted claim are present in the accused device, which we show in the complaint. That survives the pleading requirements, and that follows Iqbal Twombly and dis-disease. In addition, this court can follow that for 101 as well because we can't be expected to guess what type of affirmative defense they're going to raise. For example, here, how could we know that they were going to assert that the claim was directed to facilitating cross-marketing relationships when facilitating cross-marketing relationships is not part of the claim? And this court teaches that when we're looking at what the claim is directed to, we have to focus on the improvement in the claims, and that is certainly not the improvement. The improvements are specifically claimed, which is using one page, one web page, to create these reciprocal links, and doing it in a method that's different from before. That difference is specified in how they got around Horstman. Your Honors, the closest case to this case is DDR Holdings, and it's close because it covers very similar technology because the solutions are rooted in the computer technology. DDR Holdings, in fact, was the Ross patent that we cited. That's the same patent, and it was cited against us during prosecution. Both DDR and our case are directed to establishing links, and the DDR Holdings patent shows that if you adopted LinkedIn's claim to facilitating cross-marketing relationships, that would be incorrect because it would encompass DDR Holdings, which we know is not abstract. The summary of the invention in the DDR Holdings patent is an invention that relates to a new paradigm of co-marketing on the Internet. So that broad characterization of what the claim is directed to is entirely untethered to the claim and to the improvement that is claimed in the patent. Your Honor, the case should be reversed because under Rule 12, you just consider whether the pleading allegations were specific, and they were. The pleading allegations pled facts, and they did, and you don't go into the analysis of how specific they were. Under the Supreme Court precedent, in fact, Gomez, you don't have to anticipate what the affirmative defense will be, but it also can be reversed under Berkheimer and Atrix, which show that once you get into Alice Step 2, when you're looking at what the order combination is, that's a factual determination. And LinkedIn presented no facts about whether the order combination was routine or well-understood. And in addition, the District Court needed to resolve that well-understood routine combination inquiry with clear and convincing evidence under I4I, which it did not do. So for both of these reasons, Your Honor, this case can be reversed. Why don't we hear from the other side and what we certainly need to determine. Thank you. Mr. Krusen, you agree Claim 1 is representative as well? Yes, Your Honor. May it please the Court. If I may, I just want to address one issue regarding waiver. I heard my friend suggest that we somehow injected Horstman into this dispute by submitting a Notice of Subsequent Authority. That's at Appendix 318. We submitted that Notice of Subsequent Authority to reference a rejection based on 101. Neither party mentioned Horstman below. The reference was never submitted to the District Court and no arguments were presented regarding Horstman whatsoever. Thank you for clarifying. De Stefano relies primarily on Horstman as the distinction between Claim 1 and the prior art, but that was not at issue below. At issue below was a prior art concerning what a web designer could do as far as programming the system and resulting in cross-links between two web pages. This Court's jurisprudence under Alice has classified claims really in two categories. One, are claims directed at a specific improvement designed to improve computers as tools or create some other technological innovation. And another category is the business practice or some fundamental economic practice that uses computers, generic computers, to perform it. And this case clearly falls in that latter category. This Court has observed a characteristic of cases in that latter category is that they frequently include functional character claim language. And that's electric power grip case. This patent... Just to address your friend's argument, which was pretty much pervasive, is that the ordered combination was not conventional. That's repeated assertion on the other side. So can you just address that? Yeah, so Claim 1, which is in Appendix 67, describes essentially three steps.  You establish that the linking arrangement... Do you understand the ordered combination issue to be putting those limitations in a certain combination versus what the prior art taught? I don't think so, Your Honor. I don't think there's anything unique or innovative about the order of the combinations. It makes sense that you have to receive indications to opt into an arrangement before that arrangement is established in a database and before the linking arrangement is created. So we think that the order is simply the logical arrangement. And this is also what a web designer would do. So the patent describes a process whereby in the prior art you'd have to pay a web designer to establish these cross-linking relationships between two different websites. And to do that, you often have contractual relations, relationships showing that the two parties agree to enter into this. So that's the equivalent of two parties opting into a linking arrangement. And the contract itself is a record of the arrangement, just as establishing the arrangement in a database is a record. And then finally, the implementation of adding links to the webpages. There's no dispute that that was done in the prior art. That's what the patent describes as web designers having done in the past. So we really think this is just the automation of that process without any implementation details whatsoever. There's no description whatsoever in the record about how this process is any different from that. And so this case is a lot like OIP technologies where there was a prior manual process of doing price optimization and then the patent claimed automating that procedure. The court held that was not enough to render the patent claims patent eligible. It's also like the credit acceptance court case, and that's when you had a manual process for developing auto loans. And the opinion described that as manual, laborious, and iterative. And there was the idea to automate that. And that was not enough to render the patent eligible in that case. There's a case called VideoShare Technologies, and that was a district court case that was affirmed by this court in our Rule 36 judgment, so it's not precedential. But there, the claims described automating the process of manually coding in links to videos. That's very similar to this case. And the fact that you're automating something without any implementation details, we think, cannot render these claims patent eligible under Section 101. And the automation of that prior art process is exactly what DiStefano said was going on in the district court below. And they repeated that a couple times. One is in Epidemics 181, and this is in the opposition brief in the district court. They said, as further explained in the 760 patent specification, the claim methods enable web design and cross-linking without requiring that individual to learn HTML or to interact extensively with a web designer at a website development company. So the claim innovation that's claimed in the 760 patent is the elimination of a website developer who would do exactly what this claim does. And the claim never describes how any of these steps are performed. It's purely functional in nature, which this court has held is a characteristic of claims held ineligible under Section 101. And DiStefano repeated that idea in the hearing transcript. This is in Appendix 228, and this is what DiStefano said. The fact that you could have paid someone to do something really complicated before, and now an invention makes that process less complicated, doesn't mean it is not patentable. The fact that somebody knew how to do it before in a really complicated and difficult way. So they're admitting that the idea here is just automating what was done in the prior art. And we contend under the case law I just described, that's not enough to render the patent eligible under Section 101. It's plain that this patent is directed at marketing ideas. It's replete throughout the specification of the patent. The patent describes adding links as a marketing activity. It says, a common way of marketing a website is creating links between web pages. That's Appendix 54, Column 2, Lines 43 through 47. It calls links an element for marketing. That's Appendix 55, Column 3, 63 through 65. And it describes the problem that the applicant was facing as marketing problems. It says, although the use of such banner ads and links is very common, the setting up of such mechanisms is not always easy. That's Appendix 54, Column 2, Lines 47 through 49. But the not always easy is not referring to any technical difficulty, because the specification goes on to say, other websites typically do not display banner ads and links for a particular website without contractual arrangements, including payment, which can be difficult for a novice web designer to arrange and expensive to arrange via a website development company. So it's matchmaking that was the difficulty in the prior art describing the specification, not any technical problem. And there's no technical solution proposed here, just functional claiming, describing what a web designer did in the prior art. And the patent describes the solution as a marketing solution. This is Appendix 55, Column 4, Lines 20 through 25. The present invention further relates to an internet-based system for assisting a website designer in establishing an arrangement in order to market the first website at the second website. So we think it's plain. We've probably read all this. Okay, maybe I'll move on then. On step two, we think it's been conceded that the individual steps are conventional, and so it's only the word combination. We think the word combination is merely automating what was done in the prior art. There's some reference in the specification that this invention somehow saves users from having to learn HTML under this court's case law, including Capital One Financial Court. Sparing laypersons without technical abilities from having to learn a computer language is not enough to render a patent claim eligible. That's not a very hard language to learn anyway. All right, I think we have your argument. Okay, I'm happy to submit, Your Honor. If there's anything on the pleading issues, I'm happy to address those. Thank you, Your Honor. Thank you, Your Honors. We're in a Rule 12 environment. We're not in a summary judgment environment. We're in an environment where all allegations should be accepted and granted in favor of the pleading party. We didn't have a chance to put on this evidence because it's Rule 12, yet what I hear from a opposing counsel is what he believes, what he reads, what he thinks, and, Your Honors, that's not the standard. Actually, marketing problems can be solved by technical solutions, which was the DDR case. In addition, he says the problem may not be in the specification. That also doesn't have to be the case. It just has to be captured by the claims, and that's the court's sell-spin case. In addition, in Electric Power, the court talked about how patenting a solution, which is what we're doing, rather than a result, patenting a solution is good because it encourages the development of alternative solutions. One more thing about Horstman. He says Horstman wasn't interjected. If you look at Appendix page 328, that's where the Patent Office is talking about Horstman and the prior art, so it most certainly was interjected, but it shouldn't matter because Horstman is just the proof that satisfies the allegations that we made. Thank you. Thank you, Your Honors. We thank both sides, and the case is submitted. That concludes our proceedings. All rise.